IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-22282-KMM

JANE DOE NO. 50, by and through
MOTHER DOE, as her parent and
natural guardian and MOTHER DOE,
individually,

    Plaintiffs,

vs.

CHARTER SCHOOLS USA, INC.,
RENAISSANCE CHARTER SCHOOL, INC.,
and CHARTER SCHOOLS USA AT
KEYS GATE, L.C.;

    Defendants.
_____/

**DEFENDANTS, CHARTER SCHOOLS USA, INC. AND CHARTER SCHOOLS USA AT KEYS GATE L.C.'S, MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO COMPLY WITH FLORIDA STATUTE 768.28(6) AND SUPPORTING MEMORANDUM OF LAW**

    Defendants, CHARTER SCHOOLS USA, INC. ("CHARTER USA") and CHARTER SCHOOLS USA AT KEYS GATE, L.C. ("KEYS GATE CHARTER"), by and through the undersigned counsel, and pursuant to Florida Statute Section 768.28(6), move to dismiss Plaintiffs' Complaint for failure to provide pre-suit notice and states as follows:

    1.    This is an action for damages arising out of the alleged sexual discrimination, harassment, and assault of Plaintiff, JANE DOE, during her enrollment at Keys Gate Charter High School, whose charter is held by RENAISSANCE CHARTER SCHOOL, INC. ("RENAISSANCE CHARTER"), for the period of approximately August 2012 through April 15, 2014.

    2.    Plaintiffs filed their Complaint on June 16, 2015, alleging Violation of Title IX (Count I), Negligence (Count II), and Loss of Consortium (Count III) against all Defendants, including CHARTER USA and KEYS GATE CHARTER, the corporate entities involved in

operating and maintaining the subject charter school. *See Plaintiffs' Complaint attached hereto as Exhibit A.*

3. Florida's Charter School Statute states that charter schools "shall be part of the state's program of public education" and that "[a]ll charter schools in Florida are public schools." Fla. Stat. §1002.33 (2014). RENAISSANCE CHARTER, as a charter school organized under the laws of Florida and the governing body of the subject charter school, is a public school as prescribed by the statute. *See* Fla. Stat. §1002.33(1). Furthermore, "for the purpose of tort liability, the governing body and employees of a charter school shall be governed by §768.28." Fla. Stat. 1002.33 12(h).

4. It is fundamental under the law that the doctrine of sovereign immunity prohibits lawsuits against a state government, and its agencies and subdivisions, without the government's consent. *Cauley v. City of Jacksonville,* 403 So. 2d 379 (Fla. 1981). In cases involving liability for torts, Florida has waived sovereign immunity, "but only to the extent specified in this act." Fla. Stat. §768.28(1). Actions at law against the state or its agencies to recover damages in tort may be prosecuted, but only "subject to the limitations specified in this act." *Id.*

5. Accordingly, the statutory waiver of sovereign immunity, including its pre-suit notice requirement and any other limitations prescribed therein, shall be strictly construed. Florida Statute 768.28 enumerates the pre-suit notice requirements which must be complied with in order to bring an action against the state, or one of its agencies. *See Levine v. Dade County School Board*, 443 So. 2d 201, 2012 (Fla. 1983).

6. Specifically, Florida Statutes Section 768.28(6)(a) requires a Plaintiff to provide written notice of claim to the state or its agencies, and states as follows:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services,

>within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing;

Fla. Stat. §768.28(6)(a)(2013).

7. Notice to the subject governmental entity and the denial of claims are the conditions precedent to maintaining an action against the state or its subdivisions. Fla. Stat. §768.28(6)(b)(2013) (For purposes of this section of the Florida Statutes, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action).

8. Florida courts have repeatedly upheld a claim of governmental immunity where a plaintiff fails to provide proper notice as required by the statute. *See Metropolitan Dade County v. Lopez*, 889 So. 2d 146 (Fla. 3d DCA 2004) (remanding action to trial court for the entry of a directed verdict based on plaintiff's failure to provide written notice to the Department of Insurance).

9. In the present matter, Plaintiffs have failed to allege compliance with, or in fact comply with, the above referenced pre-suit notice requirement, by failing to serve written notice on CHARTER USA or KEYS GATE CHARTER of Plaintiffs' claims prior to instituting this suit. Plaintiffs' failure to meet with this compulsory condition precedent prior to filing suit against CHARTER USA and KEYS GATE CHARTER is in direct violation of Fla. Stat. §768.28. As such, there has been no waiver of sovereign immunity and Plaintiffs' Complaint must be dismissed.

## Memorandum of Law in Support of Dismissal

As stated above, the state of Florida and all of its agencies, are entitled to sovereign immunity under the law. The only exception to state sovereign immunity is consent by the government. *Cauley*, 403 So. 2d 379. Florida has provided for a waiver of sovereign immunity in bringing tort claims against the government; however, the limitations set forth in the statute and any steps required by the plaintiff in advance of bringing such a claim must be strictly complied with. Fla. Stat. §768.28(1). As defined by the above referenced act, state agencies or subdivisions are defined as ". . . including state university boards of trustees; counties and municipalities; and **corporations primarily acting**

**as instrumentalities or agencies of the state, counties, or municipalitie**s. . . " Fla. Stat. 768.28(2) (emphasis added). It is well established under Florida law that a charter school is a public school and an agency of the state for these purposes. Fla. Stat. §1002.33(1). ("All charter schools in Florida are public schools"). Accordingly, as discussed in more detail below, CHARTER USA and KEYS GATE CHARTER are entitled to the same protections as all state agencies under the law, and Plaintiffs' claims should be dismissed for their failure to comply with the pre-suit notice requirements.

### A. Charter Schools are Public Schools under Florida Law and are Entitled to the Sovereign Immunity Protections Set Forth in Florida Statute § 768.28

Florida's Legislature has made clear under the Charter School Statute that all Florida charter schools are public schools. Furthermore, "for the purpose of tort liability, the governing body … of a charter school shall be governed by §768.28." Fla. Stat. 1002.33 12(h). The laws of statutory construction require courts to give effect to the legislature's intent. *Daniels v. Florida Dept. of Health,* 898 So. 2d 61 (Fla. 2005). In doing so, the courts must first look to the actual language used in both statutes. *Id.* at 64. When the statute is clear and unambiguous, courts will not look beyond the statute's plain language to determine the legislative intent. *Id.* The plain language of the statute governing charter schools is clear and unambiguous in stating that the governing body of the charter school shall be governed by §768.28. Fla. Stat. 1002.33 12(h). Accordingly, they shall be treated as such and shall be given the same protections as all sovereign branches and agencies of the state.

The First District Court of Appeals has drawn a clear constitutional line which addresses the relationship between the public school board and charter schools. *Duval County School Bd. v. State, Bd. Of Educ.,* 998 So. 2d 641, 643 (Fla. 1st DCA 2008). The *Duval* court was called upon to determine whether Florida Statute Section 1002.335 was a constitutionally permitted exercise of the Legislature related to the attempted expansion of the powers of charter schools. *Id.* Section 1002.335 provided

for the creation of charter schools throughout Florida, while permitting and encouraging[1] the creation of a parallel and independent system of free public education, escaping the operation and control of local elected school boards. *Id.* The court held that the proposed statute was facially unconstitutional and the legislature acted outside its constitutional limits. *Id.* at 644. In making its decision, the *Duval* court pointed to the Florida Constitution, and the parameters set forth therein, which states clearly that "[e]ach county shall constitute a school district. . . In each school district there shall be a school board . . ." Fla, Const. Art. 9 § 4 . It goes on to state that "[t]he school board **shall operate, control and supervise all free public schools** within the school district . . ." Fla. Const. Art. 9 § 4(b) (emphasis added).  Thus, the *Duval* court held that Florida Statute Section 1002.335, in allowing for an entity other than the school board to operate and control charter schools within a school district, was a total and fatal conflict with Article IX § 4 of the Florida Constitution.  The result of this decision was that each school board within the state retains authority to sponsor, operate, control, and supervise charter schools within their county pursuant to Article IX § 4 of the Florida Constitution. *See School Bd. Of Miami-Dade County v. State Bd. Of Educ.,* 11 So. 3d 467 (Fla. 1st DCA 2009); *Hernando County School Bd. v. State, State Bd. of Educ.,* 1 So. 3d 205 (Fla. 1st DCA 2008); *School Bd. of Palm Beach County v. State Bd. of Educ.*, 998 So. 2d 647 (Fla. 1st DCA 2008).

As can be seen from the above cases, Florida courts have clearly included charter schools as free public schools under the authority of each respective county's school board, and related state agency. In the same respect, courts have repeatedly treated public charter schools as local government entities, entitled to protections, limitations, and regulations applicable to all arms of the state. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 60 F. 3d 1175 (10th Cir. 2010). In determining whether Twin Peaks Charter could be held liable under 42 U.S.C. § 1983 (civil action for deprivation

---

[1] Florida Statutes, section 1002.335(2)(a), provides that it is the intent of the Legislature that "[t]here be established an independent, state-level commission whose primary focus is the development and support of charter schools."

of rights by a state actor) for their claims, the 10th Circuit held that because Twin Peaks Charter was a public charter school, the principles of municipal liability apply. *Id.* at 1188. (describing the public charter school as a "local governmental entity"). To that end, charter schools are also subject to the Sunshine Laws of Florida which provide right of access to all government meetings of "any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision," evidencing the clear intent of the legislation to treat charter schools as public entities. *See* Fla. Stat. 286.011(1) (2012); Op. Att'y Gen. Fla. 10-14 (2010) (collegial board created by board of directors of a charter school to oversee personnel decisions of the school is subject to the Sunshine Law).

### B. Charter USA and Keys Gate Charter are Instrumentalities of the State and are Entitled to Sovereign Immunity Protections Set Forth in Florida Statute § 768.28

As demonstrated above, state agencies or subdivisions are entitled to the protections of sovereign immunity. "[C]orporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities" are specifically included in the statutory definition of a state agency or subdivision, entitled to the sovereign immunity limitations set forth in Section 768.28, Florida Statutes. In the instant matter, Section 1002.33, Florida Statutes (Charter School Statute), grants charter schools the same state agency status that political subdivisions and public schools enjoy under Section 768.28. By legislative codification, the Charter School Statute deems charter schools to be part of the public school system for constitutional purposes, operating under the jurisdiction of public schools and subject to the control of public officials. *See* Fla. Stat. §1002.33(5). Consequently, CHARTER USA and KEYS GATE CHARTER, as instrumentalities of RENAISSANCE CHARTER, fall within the statutorily protected class of corporate instrumentalities of the state.

As further evidence of the statutory intent to include school boards and their governing bodies within the sovereign immunity limitations set forth above, the enabling legislation for charter

schools underscores the substantial control exerted by county school districts over charter schools. *See Imhotep-Nguzo Saba Charter Sch. v. Dep't of Educ.,* 947 So. 2d 1279, 1284 (Fla. 4th DCA 2007) (affirming the State Board of Education's determination of the approval or denial of charter application). Most significant to the facts at issue here, the "Florida Supreme Court recently confirmed that private corporations primarily acting as agencies or instrumentalities of independent establishments of the State are included within" the definition of Florida Statute Section 768.28(2) ("corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities"). *UCF Athletics Ass'n Inc. v. Plancher,* 121 So. 3d 1097. 1103 (Fla. 5th DCA 2013) (citing *Keck v. Eminsor,* 104 So. 3d 359, 368 (Fla. 2012) ("The State acts through its agencies and independent establishments, and a corporate instrumentality of an agency or independent establishment is an instrumentality of the state.").

The *UCF Athletics* court found that the UCF Athletics Association, the statutorily authorized organization responsible for administering the school's athletic department, functioned primarily as an instrumentality of the university and was entitled to sovereign immunity from suit. *UCF Athletics Ass'n Inc.* 121 So. 3d at 1109. The key factor in determining whether a private corporation is an instrumentality of the state for sovereign immunity purposes is the level of governmental control over the performance and day-to-day operations of the corporation. *Id.* at 1106. The *UCF Athletics* court relied on the fact that the private corporation athletic organization was wholly controlled by and intertwined with the university in that the university created it, funded it, and could dissolve it, in addition to overseeing the organization's day-to-day operations as much or as little as university saw fit. *Id.* at 1109.

Similarly, in *Prison Rehabilitative Industries & Diversified Enterprises, Inc. v. Betterson,* 648 So. 2d 778 (Fla. 1st DCA 1994), the court found that while the governing statute provided correctional work programs "can best operate independently of state government" it also recognized that the

"state [has] a continuing interest in assuring continuity and stability of the programs. *Id.* at 780 (quoting Section 946.502(4), Fla. Stat. (2011)). Therefore, although PRIDE was allowed substantial independence in the running of the work programs, essential operations remained subject to a number of legislatively mandated constraints over its day-to-day operations. The *Betterson* court determined that these statutory constraints cumulatively constituted sufficient governmental control over PRIDE's daily operations to require the conclusion as a matter of law that PRIDE had, from its inception, acted primarily as an instrumentality of the state. *Id.* at 780–81.

In a distinguishable case, the First District Court of Appeals found that a teaching hospital was not entitled to sovereign immunity because the Legislature intended to treat is as an "autonomous and self-sufficient entity, one not primarily acting as an instrumentality of the state." *Shands Teaching Hospital & Clinics, Inc. v. Lee,* 478 So. 2d 77, 79 (Fla. 1st DCA 1985). As discussed in Section B above, the First District Court of Appeals has already determined that charter schools are not "a parallel and independent system of free public education, escaping the operation and control of local elected school boards." *Duval County School Bd.,* 998 So. 2d at 644. (holding Florida Statute Section 1002.335 was an unconstitutional expansion of power for charter schools). Specifically relevant to this point, the *Duval* court noted that the Florida Constitution clearly delegates the power to operate, control and supervise all free public schools within the school district with each county school board. *Id;* Fla, Const. Art. 9 § 4(b). Therefore, under the Florida charter school system, each school board within the state retains authority to sponsor, operate, control, and supervise charter schools within their county. *See School Bd. Of Miami-Dade County,* 11 So. 3d 467.

CHARTER USA and KEYS GATE CHARTER are private corporations primarily acting as agencies or instrumentalities of independent establishments of the State, and are, therefore, included within the definition of Florida Statute Section 768.28(2). *See UCF Athletics Ass'n Inc.,* 121 So. 3d 1097. Similar to both *UCF Athletics* and *Betterson,* Miami-Dade County School Board exercises

sufficient control and constraint over the daily operations of the Keys Gate Charter High School through CHARTER USA and KEYS GATE CHARTER. Furthermore, Miami-Dade County school board has the authority to terminate RENAISSANCE CHARTER, as was heavily relied upon in *UCF Athletics* decision. While the Charter School Statute was designed to improve student learning and achievement through the creation of charter schools, the state has a continuing interest in assuring continuity, stability, and oversight of the programs. *See* Fla. Stat. §1002.33. Unlike the private corporation and hospital program at issue in *Shands* (which was denied entitlement to sovereign immunity)*,* Florida courts have previously determined that the charter school system is **not** an autonomous and self-sufficient entity. *Duval County School Bd.,* 998 So. 2d at 644.

Therefore, although charter schools such as CHARTER USA and KEYS GATE CHARTER are allowed a level of independence in the operation of charter programs, they are nevertheless subject to legislatively mandated constraints over day-to-day operations through their contractual relationship with RENAISSANCE CHARTER. As in *Betterson,* these statutory constraints cumulatively constitute sufficient governmental control over CHARTER USA and KEYS GATE CHARTER'S daily operations of the Keys Gate Charter High School and require the conclusion that, as a matter of law, these Defendants are primarily an instrumentality of the state. Furthermore, of importance to note is that Plaintiffs' Complaint does **not** contain any allegations to the contrary. In fact, Plaintiffs' Complaint states that all three named Defendants "owned, operated, maintained, and/or staffed Keys Gate Charter High School" and collectively refer to Defendants as "Keys Gate Charter High School" or "Charter School" throughout the Complaint. *See Exhibit A ¶ 5*. Accordingly, CHARTER USA and KEYS GATE CHARTER are entitled to the limitations set forth in Florida Statute Section 768.28, as private corporations acting as an instrumentality of the state, and the principals of sovereign immunity.

### C. Charter USA and Keys Gate Charter are Agents of the State Entitled to the Sovereign Immunity Protections Set Forth in Florida Statute § 768.28

Separate and apart from the arguments presented above, the Court should also consider dismissal based upon CHARTER USA and KEYS GATE CHARTER'S position as "agents" of a state agency (RENAISSANCE CHARTER), entitled to immunity from suit. While Florida Statute Section 768.28(1) permits the waiver of sovereign immunity for government entities as to tort actions, officers, employees, and *agents of the state* are personally immune from tort suits if their conduct falls within the scope of their employment and was not committed in bad faith, with malicious purpose, or in a willful and wanton matter. Fla. Stat. §768.28(9)(a). Rather, the exclusive remedy for injury or damage resulting from an agent's conduct shall be by action against the state agency which employs the officer, employee, or agent. *Id.* In fact, the denial of absolute immunity from suit is recognized by the Florida Supreme Court as sufficient irreparable injury to justify interlocutory appellate review. *Keck v. Eminisor,* 104 So. 3d 359 (Fla. 2012).

In the instant matter, like *Keck*, the denial of CHARTER USA and KEYS GATE CHARTER's entitlement to immunity from suit is sufficient to establish irreparable injury; if CHARTER USA and KEYS GATE CHARTER are required to continue to stand trial and wait for a final judgment, then these Defendants have effectively lost the right conferred by statute to be protected from even being named as a party defendant and having to withstand litigation, thereby rendering the statutory protection meaningless for agents of the state.

### D. Plaintiffs Failed to Comply with Notice Requirement of Florida Statute § 768.28

Under the circumstances presented here, Florida courts have repeatedly held that a failure to allege compliance with the notice requirements under Florida Statute 768.28(6) warrants dismissal of all claims. *Eaton v. School Bd. of Palm Beach County, Florida,* 2007 WL 646967 (S.D. Fla. 2007). In *Eaton,* the court explained that in order to maintain a tort claim against a public entity, Plaintiff must abide by Section 768.28, Florida Statutes, which waives the government's sovereign immunity in certain

causes of action and sets out mandatory procedures one must follow in order to sue pursuant to that waiver. *Id.* One such requirement is that a Plaintiff must notify the agency, in writing, of its claim within three years of the incident **before filing suit**. *Id;* Fla. Stat. § 768.28(6) (emphasis added). The plaintiff in *Eaton* argued that, in filing the subject lawsuit suit, she had provided the required written notice. The court disagreed with her assertion and required strict compliance, explaining that "[s]ince the statute clearly forbids the institution of an action without prior notice, Plaintiff's contention is clearly incorrect." *Id.*

Similarly, the statutory waiver requisite which requires notice to the Department of Insurance[2], has been repeatedly enforced. *Hazel v. School Bd. of Dade County, Fla.,* 7 F. Supp. 2d 1349 (S.D. Fla. 1998). In *Hazel*, a school employee failed to allege that she gave written notice to the Department of Insurance, as is required by Florida Statute Section 768.28(6)(a), within the prescribed time period in her complaint for damages based upon negligent supervision and retention and intentional infliction of emotional distress against the school board. *Id.* The plaintiff's failure to meet this requirement under the statute warranted dismissal of the claims in their entirety. *Id.* Likewise the Fourth District Court of Appeals held that the statute requiring written notice to the Department of Insurance of the tort claims against state agencies is part of the statutory waiver of sovereign immunity, and requires strict compliance with the statutory requirements. *Broward County School Bd. v. Joseph,* 756 So. 2d 1077, 1078 (Fla. 4th DCA 2000). The *Joseph* court highlighted the importance of strict compliance with these requirements by dismissing the plaintiff's personal injury suit against the defendant school board with prejudice. *Id.* at 1078. The court explained that it was required to dismiss the claims with prejudice, as the failure to present written notice of the claim to the Department of Insurance within the statutory time period was fatal to the claim, and would

---

[2] The current version of Florida Statute Section 768.28(6) requires written notice to the Department of Financial Services, rather than the Department of Insurance; however, the same principals apply.

ultimately prevent the plaintiff from ever satisfying the condition precedent to filing suit against the school board once the statutory period had run. *Id.*

While Counts II (negligence) and III (loss of consortium) are clearly tort claims subject to the statutory notice requirements of Section 768.28(b), Florida Statutes, the claims made in Count I of Plaintiffs' Complaint alleging violation of Title IX by Defendants are also tort claims that should be subject to the statutory notice requirements of Section 768.28(b), Florida Statutes.  See *Doe ex rel. Doe's Mother v. Sinrod*, 90 So. 3d 852, 856 (Fla. Dist. Ct. App. 2012) and *Janie Doe 1 ex rel. Miranda v. Sinrod*, 117 So. 3d 786 (Fla. Dist. Ct. App. 2013), reh'g denied (Aug. 9, 2013), review granted sub nom. *Palm Beach Cnty. Sch. Bd. v. Doe 1*, 145 So. 3d 827 (Fla. 2014).

In *Doe ex rel. Doe's Mother v. Sinrod*, the court relied on 95.11(3), Florida Statutes, which sets forth the statute of limitations for negligence claims, to determine the statute of limitations applicable to the Title IX claims brought by appellants.  In doing so, the court stated that "[A] Title IX claim for damages is most closely analogous to a common law action for personal injury; therefore, the statute of limitations for personal injury actions controls." Id. at 856 (quoting *M.H.D. v. Westminster Schools,* 172 F.3d 797, 803 (11th Cir.1999)).  Thus, the court recognized the Title IX claims as tortious in nature.

In a separate action, *Janie Doe 1 ex rel. Miranda v. Sinrod*, the Fourth District Court of Appeals reversed dismissal of a Title IX claims by the trial court and held that the Title IX claims related back to the original pleading filed five years prior.  In doing so, the court stated, in *dictum*, that because it held that the Title IX claims related back to the original pleading, the original pre-suit notice had given appellees sufficient notice pursuant to Section 768.28, Florida Statutes, and the court need not address appellees' argument to the contrary.  117 So. 3d 786, 790 n. 5 (Fla. Dist. Ct. App. 2013)citing *Magee v. City of Jacksonville,* 87 So.2d 589, 591–92 (Fla.1956) (explaining that pre-suit

notice is designed to make the government entity aware of the claims alleged); *see also City of Miami v. Cisneros,* 662 So.2d 1272, 1274 (Fla. 3d DCA 1995) (using the relation back analysis to determine if the plaintiff complied with the pre-suit notice requirements). In reviewing this opinion with the facts presented, it certainly appears that Florida courts have at least impliedly applied the notice requirements of Section 768.28, Florida Statutes, to Title IX claims.

In the instant case, the Plaintiffs have failed to provide written notice, failed to allege compliance with the pre-notice requirements to CHARTER USA and KEYS GATE CHARTER and the Department of Financial Services, and failed to present evidence of written notice as required under the statute. *See* Fla. Stat. § 768.28(6). Plaintiffs' failure to meet with these requirements demands dismissal of all claims, as CHARTER USA and KEYS GATE CHARTER are entitled to sovereign immunity, and pre-suit notice, which is afforded to all public schools, state agencies, and governing bodies of charter schools within the state of Florida.

## Conclusion

It is clear under Florida statutory law, and case law interpreting same, that charter schools are public schools. Florida courts have held that public charter schools remain under the authority and control of the county school board, and may not be treated as independent or separate under the constitutional limitations of the state, demonstrating the control Miami Dade County school board has over KEYS GATE CHARTER, CHARTER USA and RENAISSANCE CHARTER. Furthermore, Florida law has established that private corporations are entitled to sovereign immunity limitations when they are acting primarily as an instrumentality of the state. As such, CHARTER USA and KEYS GATE CHARTER are entitled to the state agency protections and sovereign immunity limitations. Therefore, because the Plaintiffs have failed to meet the statutorily

prescribed notice requirements applicable to all state agencies and subdivisions, the Complaint must be dismissed.

WHEREFORE, Defendants, CHARTER SCHOOLS USA, INC. and CHARTER SCHOOLS USA AT KEYS GATE, L.C., respectfully request that this Court enter an Order dismissing Plaintiffs' Complaint against same, and any other further relief deemed just and proper.

Respectfully submitted,

**LYDECKER| DIAZ**
*Counsel for Defendants*
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
(305) 416-3180 – Phone
(305) 416-3190 - Fax


By: ___/s/ *Emanuel Galimidi*___
EMANUEL GALIMIDI, ESQ.
Florida Bar No.: 666831
STEPHANIE H. VO, ESQ.
Florida Bar No.: 28603

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 31, 2015, a true and correct copy of the foregoing was filed utilizing the Court's CM/ECF system which will send electronic notice of this filing to all counsel of record.

Jeffrey M. Herman, Esq.
Daniel G. Ellis, Esq.
Stuart S. Mermelstein, Esq.
HERMAN LAW
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431
jherman@hermanlaw.com
dellis@hermanlaw.com
smermelstein@hermanlaw.com